UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ROBERT WILLIAM KLURE, | ) | Case No.: 10-CR-00173-LHK |
| | ) | Civil Case No.: 13-CV-05683-LHK |
| Petitioner, | ) | |
| v. | ) | |
| | ) | ORDER DENYING PETITIONER'S |
| UNITED STATES OF AMERICA, | ) | MOTION TO SET ASIDE, CORRECT, |
| | ) | OR VACATE SENTENCE PURSUANT |
| Respondent. | ) | TO 28 U.S.C. § 2255 |
| | ) | |
| | ) | |

On December 4, 2013, Petitioner Robert William Klure ("Petitioner"), acting *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 challenging his sentence on two grounds: (1) that Petitioner did not receive effective assistance of counsel; and (2) that the Court committed error when it imposed a condition of supervised release without addressing Petitioner's objection to that condition. *See* ("Pet.") ECF No. 117.[1]

On December 11, 2013, the Court issued an order directing the United States to respond to the Petition. ECF No. 127. The United States filed its Opposition on January 10, 2013. ("Opp'n") ECF No. 128. Petitioner filed a Reply on January 29, 2014. ("Reply") ECF No. 129.[2]

I.    BACKGROUND

---

[1] All ECF citations refer to Case No. 10-CR-00173-LHK unless otherwise noted.
[2] Petitioner has also filed an application to proceed *in forma pauperis*. ECF No. 125. This application is GRANTED. Petitioner has no assets, and his sole source of income is Social Security Disability payments, which barely cover his monthly expenses. *Id.*

1

## A.    The Indictment and Petitioner's Plea Agreement

On March 10, 2010, Petitioner was indicted in the Northern District of California for one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014.[3] *See* ("Indictment") ECF No. 1. The Indictment alleged that in October 2005 Petitioner submitted a loan application to a federally insured financial institution using the false name "Robert St. John" and the social security number of a deceased person for a loan of $1,446,250 on a piece of property in Los Altos Hills, California. *Id.* ¶¶ 1, 5-7. Petitioner allegedly persuaded the owner of the property to sign a quit claim deed conveying title to the property to Petitioner in exchange for Petitioner providing the owner with the proceeds of the loan and making payments on the loan. *Id.* ¶ 10. The indictment further alleged that in November 2008 and January 2009 Petitioner falsely identified himself as "Robert St. John" in complaints filed in Santa Clara County Superior Court in which Petitioner alleged he was the lawful owner of the property. *Id.* ¶¶ 11-12.

Petitioner had previously been convicted for passing a United States Treasury check bearing a forged endorsement or signature in 2001 in a case heard before Judge Susan Illston. Presentence Investigation Report ("PSR") ¶ 52; *see United States v. Klure*, Case No. 01-CR-00026. Judge Illston sentenced Petitioner to 57 months imprisonment followed by three years of supervised release. PSR ¶ 52. Petitioner's sentence was subsequently modified to 19 months imprisonment followed by three years of supervised release. *Id*. Petitioner was on supervised release when he submitted the false loan application that formed the basis for the Indictment in the instant case. *Id.* As a result, Judge Illston revoked Petitioner's supervised release in 2007 and sentenced Petitioner to 18 months imprisonment. *Id*. Petitioner filed the complaints under the false name "Robert St. John" in Santa Clara County Superior Court after his supervised release had been revoked. *Id.*; *see also* Indictment ¶¶ 11-12.

On October 26, 2011, with the assistance of appointed counsel, Petitioner executed a plea agreement, ("Plea Agreement") ECF No. 56, before the undersigned judge pursuant to Federal

---

[3] This case was originally assigned to Judge Jeremy Fogel and was reassigned to the undersigned judge on September 28, 2011. ECF No. 51.

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

Rule of Criminal Procedure 11(c)(1)(C). Rule 11(c)(1)(C) provides that where the parties "agree that a specific sentence . . . is the appropriate disposition of the case . . . such a recommendation or request binds the court once the court accepts the plea agreement." The Plea Agreement provided, in relevant part:

*The Defendant's Promises*

1.      I agree to plead guilty to Count Two of the captioned Indictment charging me with making a false statement to a financial institution, in violation of 18 U.S.C. § 1014. I agree that the elements of the offense are as follows: 1) I made a false statement to a federally insured financial institution; 2) I made the false statement to the financial institution knowing it was false; 3) I did so for the purpose of influencing in any way the action of the financial institution. . . .

. . .

3.      I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government and to pursue any affirmative defenses and present evidence. . . .

4.      I agree to give up my right to appeal my conviction, the judgement, and orders of the Court. I also agree to waive any right I may have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5.      I agree to waive any right I may have to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255, or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at an time in the future after I am sentenced, except for a claim that my constitutional right to the effective assistance of counsel was violated.

6.      I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I further agree not to ask the Court for a continuance of my sentencing hearing without the consent of the government.

7.      I agree that the Court will calculate my sentencing range under the Sentencing Guidelines. . . .

. . .

13.     I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future. . . .

. . .

3

*The Defendant's Affirmations*

21.   I confirm that I have had adequate time to discuss this case, the evidence, and this Agreement with my attorney, and that he has provided me with all the legal advice that I requested.

22.   I confirm that while I considered signing this Agreement and, at the time I signed it, I was not under the influence of any alcohol, drug, or medicine.

23.   I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Plea Agreement ¶¶ 1-23.

**B.   Petitioner's Plea of Guilty**

On October 26, 2011, pursuant to the binding Plea Agreement, Petitioner pleaded guilty before the undersigned to judge to one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. *See* ("Plea Tr.") ECF No. 92. During the proceedings in which Petitioner, under penalty of perjury, changed his plea from not guilty to guilty, the Court and Petitioner engaged in the following colloquy:

THE COURT: Sir, do you understand this plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. Have you had enough time to discuss this plea agreement with your attorney?

THE DEFENDANT: Yes, I have.

THE COURT: Has your attorney been able to answer your questions about this plea agreement?

THE DEFENDANT: My attorney has been very efficient and competent and helped me understand it completely. Thank you.

THE COURT: All right, great. So you are satisfied with the services of your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Other than the promises contained in this plea agreement, has anyone promised you anything in order to get you to plead guilty today?

THE DEFENDANT: No, they have not.

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

THE COURT: All right. Has anyone made any threats against you in order to get you to plead guilty today?

THE DEFENDANT: There were no threats.

THE COURT: All right. Is your decision to plead guilty free and voluntary?

THE DEFENDANT: Yes, it is.

*Id.* at 4:10-5:12.

Petitioner also acknowledged that he understood he was giving up his right to a jury trial, to present defenses at that trial, to appeal, and to collaterally attack his conviction and sentence:

THE COURT: Do you understand that you have a right to a jury trial?

THE DEFENDANT: Yes, I understand that.

THE COURT: Do you give up that right?

THE DEFENDANT: Yes, I do.

. . .

THE COURT: Do you understand that you have the right to testify and to present evidence in your defense at trial?

THE DEFENDANT: I understand that.

THE COURT: Do you give up that right?

THE DEFENDANT: Yes, I do.

. . .

THE COURT: If this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment, your sentence, and any orders made by this Court. However, under paragraph 5 of your plea agreement—I'm sorry—paragraph 4 of your plea agreement, you are giving up this right to appeal. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Sir, you also have the right to file other types of motions or petitions attacking orders made by this Court. Under Paragraph 5 of your plea agreement, you are giving up those rights, except you are keeping the right to claim that you did not receive effective assistance of counsel. Do you understand the rights that you have given up?

THE DEFENDANT: I understand that.

*Id.* at 7:6-9:14.

### C.    Petitioner's Sentencing

5

On April 25, 2012, after reviewing the Presentence Report, and hearing from the Petitioner, defense counsel, government counsel, and the probation officer, the Court sentenced Petitioner to two months imprisonment followed by three years of supervised release. ("Sentencing Tr.") ECF No. 99, at 30:3-31:18. The sentence was at the low end of the two-to-eight month range for a person with Petitioner's criminal history and adjusted offense level. *Id.* at 28:16-18. Among the conditions of supervised release the Court imposed was the condition that Petitioner "abstain from the use of all alcoholic beverages" during his supervised release. *Id.* at 34:21-22.

In imposing the sentence, the Court was mindful that "what [Petitioner] actually agree[d] to in the Plea Agreement [was] kind of the same thing that he was punished for [when Petitioner's supervised release was revoked]." *Id.* at 29:13-16. Indeed, the Court took this fact into account in choosing to sentence Petitioner to the low end of the Guidelines range. *Id.* at 29:13-30:5. Nevertheless, the Court was "disturbed that [Petitioner] was undeterred from committing a fraud crime while on supervised release." *Id.* at 29:5-7. The Court was "also disturbed that [Petitioner] would continue in these representations about who he was and whether he had claim over [the Los Altos Hills] property even after serving a 24 month sentence [f]or a violation of supervised release." *Id.* at 29:7-11. Finally, while recognizing that lawsuits can be "messy," the Court noted that "after serving [a] 24 month sentence [Petitioner] should [not] have continued in [the civil] lawsuit." *Id.* at 29:21-24.

### D. Petitioner's Appeal

Petitioner appealed his conviction to the United States Court of Appeals for the Ninth Circuit. ECF No. 83. On January 22, 2013, the Ninth Circuit dismissed Petitioner's appeal in light of the appeal waiver in the Plea Agreement. ECF No. 110. On April 9, 2013, the Ninth Circuit denied Petitioner's motion for reconsideration. ECF No. 111.

## II. DISCUSSION

### A. Standard of Review

A Section 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or

6

1  infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

2  collateral attack." 28 U.S.C. § 2255(b).[4] Under Section 2255, "a district court must grant a hearing

3  to determine the validity of a petition brought under that section, [u]nless the motions and the files

4  and records of the case conclusively show that the prisoner is entitled to no relief." *United States v.*

5  *Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (internal quotation marks

6  omitted). A court need not hold an evidentiary hearing where the prisoner's allegations, when

7  viewed against the record, either do not state a claim for relief or are so palpably incredible as to

8  warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996);

9  *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is

10  required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and

11  (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled

12  to no relief. *See Howard*, 381 F.3d at 877.

13        **B.**      **Petitioner's Stated Grounds for Relief**

14        Petitioner requests that the Court set aside, correct, or vacate his sentence on the ground

15  that Petitioner's counsel provided ineffective assistance. Pet. at 10-20. As an initial matter,

16  Petitioner argues that the appellate waiver contained in his Plea Agreement does not foreclose the

17  current motion because the waiver does not cover claims of ineffective assistance of counsel. *Id.* at

18  9-10. As to the merits of Petitioner's ineffective assistance claim, Petitioner contends that as part of

19  the revocation of supervised release proceedings before Judge Illston, the government agreed not to

20  separately prosecute Petitioner for submitting the false loan application, and that the instant

21  prosecution was in breach of that agreement. *Id.* at 13. Petitioner argues that appointed counsel

22  provided ineffective assistance when counsel refused to pursue an immunity defense based on this

23  alleged agreement. *Id.* at 14. Moreover, Petitioner claims that counsel instead "sabotaged"

24  Petitioner's own attempt to present an immunity defense by opposing it before Judge Fogel. *Id.* at

25  14-15.

26

27  ───────────────

[4] Although Petitioner has completed his prison sentence, he remains subject to supervised release.
Accordingly, Petitioner is "in custody" for purposes of Section 2255. *See Matus-Leva v. United*

28  *States*, 287 F.3d 758, 761 (9th Cir. 2002).

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

Petitioner also contends that the Court improperly imposed the condition of supervised release that Petitioner refrain from consuming alcohol. *Id.* at 20-21. The Probation Officer recommended the no alcohol condition in the Presentence Report, *id.* at 20; *see also* PSR, Sentencing Recommendation at 4, and Petitioner objected to the condition in his Sentencing Memorandum. Pet. at 20; *see* ("Def. Sentencing Mem."), ECF No. 121, at 5-6. Petitioner claims that the Court needed to resolve this dispute before sentencing, but that the Court nonetheless imposed the condition without addressing the objection. Pet. at 20.

### C.     Petitioner's Waiver of Rights

A defendant may expressly waive the statutory right to bring a motion under 28 U.S.C. § 2255 challenging the conviction or sentence. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). Two claims that cannot be waived, however, are claims that the waiver itself was involuntary or that ineffective assistance of counsel rendered the waiver involuntary. *Washington v. Lampert*, 422 F.3d 864, 870-71 (9th Cir. 2005). Petitioner argues that he has not waived the right to file the instant Petition because the Petition raises claims of ineffective assistance of counsel. Pet. at 9-10.

Petitioner is correct that he has not waived the right to claim that he received ineffective assistance of counsel, and the Court will therefore address Petitioner's ineffective assistance claims on the merits. However, based on the terms of the Plea Agreement, Petitioner has waived his right to petition under 28 U.S.C. § 2255 on any basis *other* than ineffective assistance of counsel. Plea Agreement ¶ 5. Accordingly, the Court will consider Petitioner's claim regarding the "no alcohol" condition of supervised release only to the extent that Petitioner claims that his counsel's conduct regarding that condition constituted ineffective assistance.

### D.     Ineffective Assistance of Counsel

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies to claims that a guilty plea was not knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To prevail on such a claim, the petitioner must show that: (1) counsel's representation fell below the

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

range of competence demanded of attorneys in criminal cases, and (2) there is a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

The first prong of the *Strickland* test, deficient performance, requires a showing that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Counsel's performance must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. The test is "highly deferential" as there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

The second prong of the *Strickland* test, prejudice, requires the petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Courts may address the prongs in whichever order is most efficient, and need not address one if the other is lacking. *Id.* at 697.

Petitioner raises two ineffective assistance of counsel claims, one as to a potential immunity defense and one as to the no alcohol condition of supervised release. The Court will address each claim in turn.

### 1.     Immunity Defense

Petitioner claims that, in return for Petitioner's admissions regarding the false loan application during the proceedings to revoke Petitioner's supervised release before Judge Illston, the government agreed to not further prosecute Petitioner for that act. Pet. at 13. Petitioner contends that the prosecution in the instant case violated that agreement. *Id.* Petitioner argues that his first appointed counsel, Alfredo Morales ("Morales"), refused to pursue an immunity defense based on this alleged agreement. *Id.* at 14. Petitioner's dissatisfaction with Morales on this point

9

United States District Court
For the Northern District of California

led Petitioner to request appointment of new counsel. *Id.*; *see* ("Change of Counsel Tr.") ECF No. 101. Magistrate Judge Howard Lloyd granted Petitioner's request. Change of Counsel Tr. at 4:22-5:3. Petitioner's second appointed counsel, Jeane DeKelver ("DeKelver"), similarly refused to pursue an immunity defense. Pet. at 14. As a result, Petitioner raised the potential immunity defense in a *pro se* motion. *Id.*; *see* ("Pro Se Mot.") ECF No. 42.

Petitioner argues that at an August 25, 2011 hearing before Judge Fogel on Petitioner's *pro se* motion, Petitioner's counsel argued against the motion and urged Judge Fogel to rule on the motion over Petitioner's objections. Pet. at 14-15; *see* ("Pro Se Mot. Tr.") ECF No. 101. At the hearing, Judge Fogel tentatively denied Petitioner's motion, stating that "I can tell you that based on what is in front of me right now, that I would deny the motion. I don't think the motion has any merit." *Pro Se Mot. Tr.* at 9:3-5. Petitioner claims that he withdrew his *pro se* motion as a result of his attorney's actions and Judge Fogel's tentative ruling, and thereafter accepted the Plea Agreement in "fear and hopelessness." Reply at 6. Petitioner contends that his counsel's failure to pursue an immunity defense, and her arguments against the immunity defense, constituted ineffective assistance.[5] Pet. at 16.

The Court disagrees. For the following reasons, the Court finds that Petitioner's claim of ineffective assistance of counsel regarding an immunity defense does not pass either prong of the *Strickland* test.

### a.    Deficient Performance

Applying the first prong of the *Strickland* test, the Court finds that Petitioner cannot show that counsel's performance fell below an objective standard of reasonableness. In cases where counsel's failure to pursue a defense has constituted deficient performance, counsel generally overlooked the defense altogether, *see, e.g.*, *Phillips v. Woodford*, 267 F.3d 966, 983 (9th Cir. 2001) (holding petitioner raised a colorable claim of ineffective assistance when his counsel failed

---

[5] Petitioner originally framed his immunity defense as a violation of the Double Jeopardy Clause. *E.g. Pro Se* Mot. at 6. As Petitioner now concedes, Pet. at 15, Double Jeopardy does not apply in this case, as the Double Jeopardy Clause does not prohibit criminal prosecution for conduct which serves as the basis for revocation of probation. *See Standlee v. Rhay*, 557 F.2d 1303, 1307 (9th Cir. 1977).

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

1  to identify a viable alternative defense), or failed to reasonably investigate the defense, *see, e.g.*,

2  *Siedel v. Merkle*, 146 F.3d 750, 755 (9th Cir. 1998) (counsel's failure to investigate client's

3  psychiatric history, despite evidence that client suffered from mental illness, was deficient

4  performance).

5         Here, counsel neither overlooked nor failed to investigate Petitioner's proposed immunity

6  defense. Rather, the record conclusively demonstrates that both of Petitioner's attorneys were

7  aware of a potential immunity defense, researched the facts and the law regarding an immunity

8  defense, and chose not to pursue the immunity defense only upon concluding that there was no

9  basis for doing so. Initially, there is no disputing that both Morales and DeKelver were aware of a

10 potential immunity defense, as Petitioner raised the potential defense with both counsel. Pet. at 14.

11 Moreover, both Morales and Dekelver investigated the merits of this potential defense and

12 independently concluded that the defense lacked merit. Morales told Judge Lloyd that he looked

13 into an immunity defense "early on." Change of Counsel Tr. (Sealed Portion) ECF No. 118, at 8:8-

14 9. Morales stated that he investigated Petitioner's claim that the government granted him immunity

15 from future prosecution by reviewing the transcripts of the supervised release revocation hearing,

16 contacting Petitioner's prior counsel, and speaking with the Assistant U.S. Attorney. *Id.* at 8:8-21.

17 This investigation did not turn up any evidence of an immunity agreement. *Id.* Morales further

18 considered the possibility that there may have been an oral agreement between Petitioner and the

19 government, but Morales could not find enough evidence to support that theory. *Id.* at 9:12-18.

20 DeKelver similarly told Judge Lloyd that she researched the immunity issue herself and concluded

21 that it lacked merit. *See* ("Pre-Sentencing Tr.") (Sealed Portion) ECF No. 120, at 16:21-17:10.

22        In light of the conclusion that Petitioner could not raise a legitimate immunity claim, both

23 Morales and DeKelver made a strategic decision not to pursue this line of defense. Such strategic

24 decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Fairbank v. Ayers*,

25 650 F.3d 1243, 1252 (9th Cir. 2011) (deferring to counsel's strategic decision not to introduce

26 evidence regarding defendant's mental state to avoid other potentially aggravating evidence). The

27 Court is particularly disinclined to question the strategic decision to forgo an immunity defense in

28

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

*United States District Court*
For the Northern District of California

this case given that Petitioner's two attorneys independently made the same strategic decision. The Court therefore finds that counsel's decision not to pursue an immunity defense falls well within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and thus that Petitioner has failed to establish constitutionally deficient performance under the *Strickland* standard.[6]

### b.    Prejudice

Turning to the second prong of the *Strickland* test, the Court finds that Petitioner has not shown prejudice as a result of counsel's decision not to pursue an immunity defense.

First, the Court agrees with Judge Fogel that the immunity defense is without merit. *See Pro Se* Mot. Tr. at 9:5. Simply put, there is no evidence of an immunity agreement in the record, either in writing or orally. Petitioner's assertions to the contrary are conclusory and wholly unsupported. At the supervised release revocation hearing, at which Petitioner admitted the charges and his supervised release was revoked, no one made any reference to an immunity agreement, *see* ("Supervised Release Revocation Tr.") ECF No. 128, Ex. 3, and subsequent investigation failed to uncover any evidence of an immunity agreement in spite of Petitioner's repeated raising of the issue.[7]

Petitioner points to a statement made by government counsel at the end of the hearing as evidence of an immunity agreement. Pet. at 13. After the sentence had been imposed, Assistant

---

[6] The Court notes that this finding is consistent with Petitioner's own affirmations to the Court. During the plea colloquy, Petitioner declared to the Court that DeKelver had been "very efficient and competent" and affirmed that Petitioner was satisfied with DeKelver's services. Plea Tr. at 4:19-21; *accord Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

[7] Petitioner contends that "the only reason Petitioner admitted the criminal conduct and agreed to the maximum sentence . . . was to avoid further criminal liability." Pet. at 13. The Court understands Petitioner's argument to be that the government must have promised Petitioner immunity, as otherwise the supervised release revocation agreement would not have benefited Petitioner. However, contrary to Petitioner's assertion, the sentence to which Petitioner agreed was not the maximum Judge Illston could have imposed. The court accepted the parties' recommendation that Petitioner serve 18 months imprisonment followed by 6 months at a half-way house. Supervised Release Revocation Tr. at 12:18-13:4. This was somewhat less than the statutory maximum of 24 months imprisonment. *Id.* at 3:3. Moreover, if Petitioner had not admitted the charges, the burden on the government was not high. The government needed only to demonstrate by a preponderance of the evidence that the charges were more likely to be true than not. 18 U.S.C. § 3583(e)(3); *United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995).

12

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    U.S. Attorney Robb Rees said to Judge Illston: "Last time we were here, your Honor, I did say we

2    were looking into the possibility of new charges based on our view of the computers. That's not

3    contemplated at this point." Supervised Release Revocation Tr. at 13:13-16. Petitioner contends

4    that this statement is evidence that Petitioner "would not be prosecuted for this crime." Pet. at 13.

5    Not so. On its face, Rees' statement simply informed Judge Illston that, on the day of the

6    supervised release revocation hearing, the government was not envisioning filing any new charges.

7    Rees' statement that new charges were "not contemplated *at this point*" in no way foreclosed future

8    charges. Supervised Release Revocation Tr. at 13:15-16.[8] As there is no merit to the immunity

9    defense, Petitioner cannot establish a reasonable probability that his case would have been resolved

10   differently had counsel further pursued this defense.

11           Moreover, the Court was aware of, and addressed, Petitioner's claim that there was an

12   immunity agreement at Petitioner's sentencing. During the sentencing hearing, the Court sought

13   clarification from counsel from both parties regarding any possible immunity agreement stemming

14   from Judge Illston's revocation of Petitioner's supervised release. Sentencing Tr. at 6:21-13:12; *see

15   also id.* at 20:5-21:17. The Court also heard Petitioner's views on the matter. *Id.* at 20:20-21:23.

16   After hearing from both parties, the Court rejected Petitioner's supposed evidence of an immunity

17   agreement. *See id.* at 13:8-12 ("THE COURT: And I understand [the government's] point that

18   [A.U.S.A. Rees] couldn't and wasn't predicting future criminal conduct that could have occurred

19   after the 24-month sentence was served.").  Nevertheless, the Court expressly considered

20   Petitioner's supervised release revocation as a mitigating factor and as a result imposed a sentence

21   at the low end of the applicable Sentencing Guidelines range. *Id.* at 29:13-16. Petitioner has not

22   shown that there is a reasonable probability that this outcome would have been any different had

23   ───────────────────
24   [8] Moreover, Petitioner's actions after the supervised release revocation hearing would have made
     an immunity agreement, even if one had existed, irrelevant. As the Court noted at Petitioner's
     sentencing, Petitioner was not entitled to continue representing himself under a false name, or to
25   file claims asserting ownership over the Los Altos Hills property. Sentencing Tr. at 29:7-11. While
     Judge Illston anticipated that ownership of the Los Altos Hills property would be settled in a civil
26   action, *see* Supervised Release Revocation Tr. at 10:5-7, the record does not indicate that Judge
     Illston understood that Petitioner would participate in those civil proceedings using a false name or
27   that Petitioner would continue to assert ownership over the property. The Court does not find
     credible Petitioner's assertion that Judge Illston or the government *expected* Petitioner to continue
28   to assert ownership over a piece of property obtained through fraud. *See* Pet. at 16-17.

13

counsel further pressed an immunity defense. Accordingly, Petitioner has not shown prejudice under *Strickland*.

For the foregoing reasons, the Court finds that Petitioner's counsel's failure to raise an immunity defense did not constitute ineffective assistance of counsel under either prong of the *Strickland* test. As the record conclusively demonstrates that Petitioner's counsel's performance was not deficient and that Petitioner was not prejudiced by counsel's performance, and as Petitioner does not make any factual allegations beyond what is contained in the record, no evidentiary hearing is required.

## 2.    The No Alcohol Condition of Supervised Release

Petitioner claims that the Court erred in imposing as a condition of supervised release that Petitioner abstain from alcohol without first addressing Petitioner's objection to that condition. Pet. at 20. In the Presentence Report in the instant case, the probation officer noted that Petitioner reported only minimal and social consumption of alcohol. PSR ¶ 93. However, the Presentence Report also noted that in an earlier presentence report from 2001, Petitioner had reported that:

> [d]uring many difficult periods in my life . . . I have in fact used excessive amounts of alcohol . . . On some occasions I did seek counseling and professional help . . . I have been prone to depression and I do not deal well with disappointment. A number of substances smooth these problems over.

*Id.* The probation officer recommended that one of the conditions of Petitioner's supervised release be that Petitioner abstain from the use of all alcoholic beverages. PSR, Sentencing Recommendation at 4. Petitioner objected to the recommendation in the sentencing memorandum filed by his counsel. Def. Sentencing Mem. at 5-6. Petitioner claims that under Federal Rule Criminal Procedure 32(i)(3)(B) the Court needed to resolve this dispute before sentencing. Pet. at 20.

In light of Petitioner's waiver of rights, *see supra* Part II.C, the Court considers only whether Petitioner's counsel's failure to object to the no alcohol condition during Petitioner's sentencing hearing constituted ineffective assistance. For the following reasons, the Court finds that Petitioner fails to establish that counsel's conduct regarding the no alcohol condition amounted to ineffective assistance under *Strickland*.

14

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

#### a.  Deficient Performance

2      Applying the first prong of the *Strickland* test, the Court finds that Petitioner's counsel's

3   failure to object was not deficient because, contrary to Petitioner's contention, Petitioner's

4   objection to the no alcohol condition was not a factual dispute that the Court was required to

5   resolve at sentencing. Federal Rule of Criminal Procedure 32(i)(3)(B) provides that a sentencing

6   court "must—for any disputed portion of the presentence report or other controverted matter—rule

7   on the dispute or determine that a ruling is unnecessary either because the matter will not affect

8   sentencing, or because the court will not consider the matter in sentencing." "Strict compliance"

9   with Rule 32 is required, *United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir. 2006), because

10  the Court "must adequately explain the chosen sentence to allow for meaningful appellate review

11  and to promote the perception of fair sentencing," *United States v. Gall*, 552 U.S. 38, 50 (2007).

12  However, Rule 32 applies only to "factual disputes which affect the temporal term of the

13  sentence." *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). It does not apply to

14  "recommendations, opinions or conclusions not factual in nature." *United States v. Stoterau*, 524

15  F.3d 988, 1011 (9th Cir. 2008) (internal quotation marks omitted).

16      As a threshold matter, the Court notes that Rule 32 likely does not apply to conditions of

17  supervised release, as they do not affect the temporal term of the sentence. The Court need not

18  decide this issue here, however, because Petitioner did not actually challenge the factual accuracy

19  of the Presentence Report in the first place. Rather, Petitioner challenged the alcohol abstention

20  *recommendation* on the ground that the recommendation was based on statements that were over

21  ten years old. *See* Def. Sentencing Mem. at 5-6 ("The basis for [the probation officer's]

22  recommendation is ten years past."). Such sentencing recommendations are not "controverted

23  matter[s]" within the meaning of Rule 32, which applies only to *factual* disputes. *See United States*

24  *v. Segui*, 250 F. App'x 785, 786 (9th Cir. 2007) (because petitioner's objections to the supervised

25  release recommendations were not "controverted matters," the court did not need to address them

26  under Rule 32(i)(3)(B)). Because there was no factual dispute concerning the no alcohol condition

27

28

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

within the meaning of Rule 32, the Court had nothing to "resolve" or "rule on." Petitioner's counsel's decision not to object to the alcohol condition at sentencing was therefore reasonable.

### b. Prejudice

Moreover, the Court finds that Petitioner cannot show prejudice. The Court read the Presentence Report and considered the probation officer's recommendation. *See* Sentencing Tr. at 24:5. The Court came to its own decision based on the uncontroverted facts before the Court. In light of Petitioner's admissions regarding his prior abuse of alcohol, the Court was justified in requiring that Petitioner not consume alcohol as a condition of supervised release. *See* 18 U.S.C. § 3583(d)(1) (permitting sentencing courts to impose conditions of supervised release that are "reasonably related" to the factors the court may consider in imposing a sentence). As a result, had Petitioner's counsel objected, such an objection would not have undermined the validity of the no alcohol condition or prevented the Court from imposing it. Petitioner therefore cannot demonstrate that he was prejudiced by counsel's failure to raise the no alcohol condition at sentencing.

For these reasons, the Court finds that Petitioner's counsel's failure to object to the no alcohol condition of supervised release does not constitute ineffective assistance of counsel under either prong of the *Strickland* test. As the record conclusively demonstrates that Petitioner's counsel's performance was not deficient and that Petitioner was not prejudiced by counsel's performance, no evidentiary hearing is required.

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.    Petitioner's Motion to Set Aside, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255 is DENIED with prejudice;

2.    No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2);

3.    The Clerk of the Court is directed to enter judgement for Respondent and against Petitioner and close the file.

16

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    **IT IS SO ORDERED.**

2

3    Dated: August 19, 2014

4    LUCY H. KOH
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

Case No.: 10-CR-00173-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255